IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FOX HEAD, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A", <br><br> Defendants. | Case No. 21-cv-04518 |

COMPLAINT

Plaintiff Fox Head, Inc. ("Fox Racing" or "Plaintiff") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

I. JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States

---

[1] The e-commerce store urls are listed on Schedule A hereto under the Online Marketplaces.

consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold products using infringing and counterfeit versions of Plaintiff's federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

## II. INTRODUCTION

3. This action has been filed by Fox Racing to combat e-commerce store operators who trade upon Plaintiff's reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products, including apparel, motocross and mountain biking gear, and other merchandise using infringing and counterfeit versions of Plaintiff's federally registered trademarks (the "Counterfeit Fox Racing Products"). Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale and selling Counterfeit Fox Racing Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share unique identifiers, establishing a logical relationship between them and that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. Plaintiff is forced to file this action to combat Defendants' counterfeiting of its registered Fox Racing trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Fox Racing Products over the Internet. Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

### III. THE PARTIES

**Plaintiff**

4. Plaintiff Fox Head, Inc. is a corporation organized and existing under the laws of the State of California, having its principal place of business at 16752 Armstrong Avenue, Irvine, California 92606.

5. Plaintiff has been designing, developing, and marketing motocross and mountain biking gear and apparel under its Fox Racing brand for many years. The Fox Racing brand is famous around the world for high quality products that seamlessly blend innovation with style.

6. Fox Racing began in 1974 with Geoff Fox's vision—that his high-performance suspension and engine components could give riders an on-track advantage. Driven to prove this on his terms, he founded team Moto-X Fox to compete against the might of the Japanese factory teams. The team quickly became the top non-factory riders in the competitive AMA 125 National Championship series, proving that the products he and his team designed and built were the best money could buy. During the series, Team Moto-X Fox riders wore bright red, yellow and orange gear, which became an instant hit with fans and the catalyst for the Fox Racing brand.

7. In the many years since that fateful Championship series, Fox Racing has become one of the most identifiable brands in the world. Products sold under the Fox Racing brand now include branded gear, backpacks, apparel, outerwear, and products designed for motocross, mountain biking, wake boarding, surfing and other extreme sports (collectively, the "Fox Racing Products").

8. Over the years, Fox Racing has continued to elevate athletic performance through progressive innovation, including sponsoring numerous riders under the Fox Racing brand. These Fox-sponsored riders have won over forty National Motocross and Super Cross Championships,

further cementing Fox Racing's place as the global leader in motocross and mountain biking gear and apparel.

9. Fox Racing Products are distributed and sold to consumers throughout the United States, including in Illinois, through authorized retailers and the official foxracing.com website.

10. Plaintiff incorporates a variety of distinctive marks in the design of its various Fox Racing Products. As a result of its long-standing use, Plaintiff owns common law trademark rights in its trademarks. Plaintiff has also registered its trademarks with the United States Patent and Trademark Office. Fox Racing Products typically include at least one of Plaintiff's registered trademarks. Often several Fox Racing marks are displayed on a single Fox Racing product. Plaintiff uses its trademarks in connection with the marketing of its Fox Racing Products, including the following marks which are collectively referred to as the "FOX RACING Trademarks."

| Registration No. | Trademark | Goods and Services |
|---|---|---|
| 2,181,243 | FOX | For: clothing, namely, jackets, raincoats, sweatshirts, jerseys, shirts, blouses, pants, tights, shorts, hats, caps, sweatbands, headbands, gloves, belts, shoes, boots, socks, aprons in class 025. |
| 2,189,804 | FOX | For: decals, stickers, calendars, and catalogs relating to motocross sports clothing, protective gear, footwear, casualwear and accessories in class 016. |
| 2,192,660 | FOX | For: luggage, backpacks, fanny packs, all purpose sport bags, tool packs sold empty and umbrellas in class 018. |
| 2,232,648 | FOX | For: pressure air gauges, motorcycle and safety helmets, and protective clothing for motorcyclist and cyclists in class 009. |
| 2,188,305 | (fox head logo) | For: clothing, namely, jackets, raincoats, sweatshirts, jerseys, shirts, blouses, pants, tights, shorts, hats, caps, sweatbands, headbands, gloves, belts, shoes, boots, socks, aprons in class 025. |

4

| | | |
|---|---|---|
| 2,194,132 | | For: decals, stickers, calendars, and catalogs relating to motocross sports clothing, protective gear, footwear, casualwear and accessories in class 016. |
| 2,192,661 | | For: luggage, backpacks, fanny packs, all purpose sport bags, tool packs sold empty and umbrellas in class 018. |
| 2,234,764 | | For: motorcycle and safety helmets, and protective clothing for motorcyclist and cyclists in class 009. |
| 3,151,681 | | For: Protective eyewear, namely spectacles, prescription eyewear, anti-glare glasses, sunglasses, and motorcycling goggles and their parts and accessories, namely replacement lenses, frames, earstems, and nose pieces; cases specially adapted for spectacles and sunglasses and their parts and accessories in class 009. |
| 3,151,835 | | For: Sports goggles in class 009. |
| 3,143,175 | | For: Sport goggles for use in motorcycling, bicycling, snowmobiling, snowboarding, skiing and other snow-related activities in class 009. |
| 3,160,138 | | For: Protective eyewear, namely spectacles, prescription eyewear, anti-glare glasses, sunglasses, and motorcycling goggles and their parts and accessories, namely replacement lenses, frames, earstems, and nose pieces; cases specially adapted for spectacles and sunglasses and their parts and accessories in class 009. |

| | | |
|---|---|---|
| 3,276,323 | FOX RACING | For: Sport goggles for use in motorcycling, bicycling and snow sports in class 009. |
| 3,276,324 | FOX RACING | For: Protective eyewear, namely spectacles, prescription eyewear, anti-glare glasses, sunglasses, and motorcycling goggles and their parts and accessories, namely replacement lenses, frames, earstems, and nose pieces; cases specially adapted for spectacles and sunglasses and their parts and accessories in class 009. |
| 3,309,293 | *Fox logo* | For: Motorcycle helmets; protective clothing; protective helmets for sports; safety helmets in class 009. |
| 3,309,294 | *Fox logo* | For: Calendars; catalogs in the field of motocross and bicycling sports clothing, protective gear, footwear and accessories; decals; stickers in class 016. |
| 3,309,295 | *Fox logo* | For: All purpose sport bags; all-purpose athletic bags; all-purpose carrying bags; athletic bags; backpacks; bags and holdalls for sports clothing; carry-on bags; luggage; roll bags; small backpacks; sports bags; tool bags sold empty; umbrellas in class 018. |
| 3,309,296 | *Fox logo* | For: Ankle socks; aprons; belts; bicycle gloves; bicycling gloves; board shorts; boots; boxer shorts; cap visors; caps; caps with visors; cyclists' jerseys; denim jackets; denims; fabric belts; gloves; head sweatbands; headbands; headbands against sweating; jackets; jerseys; jogging pants; men and women jackets, coats, trousers, vests; men's socks; motorcycle gloves; motorcyclist boots; pants; rain jackets; raincoats; riding boots; riding gloves; short-sleeved or long-sleeved t-shirts; short-sleeved shirts; shorts; sleeved or sleeveless jackets; sleeveless jerseys; snow pants; snowboard gloves; snowboard pants; socks; sport shirts; sports jerseys and breeches for sports; sweat bands; sweat pants; sweat shirts; sweatbands; t-shirts; tights in class 025. |

6

11. The above U.S. registrations for the FOX RACING Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. The FOX RACING Trademarks have been used exclusively and continuously by Plaintiff, some for many years, and have never been abandoned. The registrations for the FOX RACING Trademarks constitute *prima facie* evidence of their validity and of Plaintiff's exclusive right to use the FOX RACING Trademarks pursuant to 15 U.S.C. § 1057(b). Attached hereto as **Exhibit 1** are true and correct copies of the United States Registration Certificates for the FOX RACING Trademarks included in the above table.

12. The FOX RACING Trademarks are exclusive to Plaintiff, and are displayed extensively on Fox Racing Products and in Plaintiff's marketing and promotional materials. The Fox Racing brand has long been among the most popular extreme sportswear lines in the world and has been extensively promoted and advertised at great expense. In fact, Plaintiff has expended millions of dollars annually in advertising, promoting and marketing featuring the FOX RACING Trademarks. Fox Racing Products have also been the subject of extensive unsolicited publicity resulting from their stylish, high quality and innovative designs. Because of these and other factors, the Fox Racing name and the FOX RACING Trademarks have become famous throughout the United States and around the world.

13. The FOX RACING Trademarks are distinctive when applied to the Fox Racing Products, signifying to the purchaser that the products come from Plaintiff and are manufactured to Plaintiff's quality standards. The FOX RACING Trademarks have achieved tremendous fame and recognition, which has only added to the inherent distinctiveness of the marks. As such, the goodwill associated with the FOX RACING Trademarks is of incalculable and inestimable value to Plaintiff.

14. Plaintiff operates an e-commerce website where it promotes and sells genuine Fox Racing Products at foxracing.com. Sales of Fox Racing Products via the foxracing.com website represent a significant portion of Plaintiff's business. The foxracing.com website features proprietary content, images and designs exclusive to Fox Racing.

15. Plaintiff's innovative marketing and product designs have enabled Fox Racing to achieve widespread recognition and fame and have made the FOX RACING Trademarks well-known marks. The widespread fame, outstanding reputation, and significant goodwill associated with the Fox Racing brand have made the FOX RACING Trademarks valuable assets of Plaintiff.

16. Plaintiff has expended substantial time, money, and other resources in developing, advertising and otherwise promoting the FOX RACING Trademarks. As a result, products bearing the FOX RACING Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Plaintiff. Plaintiff is a multi-million-dollar operation, and Fox Racing Products have become among the most popular of their kind in the world.

**The Defendants**

17. Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiff. On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems, or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

18. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

19. The success of the Fox Racing brand has resulted in its significant counterfeiting. Consequently, Plaintiff has a worldwide anti-counterfeiting program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. In recent years, Plaintiff has identified numerous fully interactive e-commerce stores, including those operating under the Seller Aliases, which were offering for sale and/or selling Counterfeit Fox Racing Products to consumers in this Judicial District and throughout the United States. E-commerce sales, including through e-commerce stores like those of Defendants, have resulted in a sharp increase in the shipment of unauthorized products into the United States. **Exhibit 2**, Excerpts from Fiscal Year 2018 U.S. Customs and Border Protection ("CBP") Intellectual Property Seizure Statistics Report. Over 90% of all CBP intellectual property seizures were smaller international mail and express shipments (as opposed to large shipping containers). *Id*. Over 85% of CBP seizures originated from mainland China and Hong Kong. *Id*. Counterfeit and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue.

20. Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to

"routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 3**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 Nw. J. Int'l L. & Bus. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 4** and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts. **Exhibit 4** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit 4** at p. 39. Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 3** at 186–187.

21. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold Counterfeit Fox Racing Products to residents of Illinois.

22. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the

Seller Aliases appear sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Plaintiff has not licensed or authorized Defendants to use any of the FOX RACING Trademarks, and none of the Defendants are authorized retailers of genuine Fox Racing Products.

23. Many Defendants also deceive unknowing consumers by using the FOX RACING Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Fox Racing Products. Other e-commerce stores operating under the Seller Aliases omit using FOX RACING Trademarks in the item title to evade enforcement efforts, while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Fox Racing Products.

24. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

25. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Fox Racing Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

26. Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Counterfeit Fox Racing Products for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Fox Racing Products were manufactured by and come from a common source and that Defendants are interrelated.

27. E-commerce store operators like Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

28. Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Plaintiff's enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiff. Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

29. Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Counterfeit Fox Racing Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have jointly and severally, knowingly and willfully used and continue to use the FOX RACING Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Fox Racing Products into the United States and Illinois over the Internet.

30. Defendants' unauthorized use of the FOX RACING Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Fox Racing Products, including the sale of Counterfeit Fox Racing Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

**COUNT I**
**TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)**

31. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

32. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered FOX RACING Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The FOX RACING Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Fox Racing Products offered, sold or marketed under the FOX RACING Trademarks.

33. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the FOX RACING Trademarks without Plaintiff's permission.

34. Plaintiff is the exclusive owner of the FOX RACING Trademarks. Plaintiff's United States Registrations for the FOX RACING Trademarks (Exhibit 1) are in full force and effect. On information and belief, Defendants have knowledge of Plaintiff's rights in the FOX RACING Trademarks, and are willfully infringing and intentionally using counterfeits of the FOX RACING Trademarks. Defendants' willful, intentional and unauthorized use of the FOX RACING Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Fox Racing Products among the general public.

35. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

36. Plaintiff has no adequate remedy at law, and if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its well-known FOX RACING Trademarks.

37. The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Fox Racing Products.

**COUNT II**
**FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))**

38. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

39. Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Fox Racing Products has created and is creating a likelihood of confusion, mistake, and deception

among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Counterfeit Fox Racing Products by Plaintiff. By using the FOX RACING Trademarks in connection with the sale of Counterfeit Fox Racing Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Fox Racing Products.

40. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Fox Racing Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

41. Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its Fox Racing brand.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the FOX RACING Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Fox Racing product or is not authorized by Plaintiff to be sold in connection with the FOX RACING Trademarks;

   b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Fox Racing product or any other product produced by Plaintiff, that is not Plaintiff's or

   not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the FOX RACING Trademarks;

  c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Fox Racing Products are those sold under the authorization, control or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

  d. further infringing the FOX RACING Trademarks and damaging Plaintiff's goodwill; and

  e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any of Plaintiff's trademarks, including the FOX RACING Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof;

2) Entry of an Order that, upon Plaintiff's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, AliExpress, Alibaba, Amazon, Wish.com and Dhgate (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the FOX RACING Trademarks;

3) That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the FOX RACING Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Plaintiff be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the FOX RACING Trademarks;

5) That Plaintiff be awarded its reasonable attorneys' fees and costs; and

6) Award any and all other relief that this Court deems just and proper.

Dated this 24th day of August 2021.   Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Jake M. Christensen
Martin F. Trainor
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
jchristensen@gbc.law
mtrainor@gbc.law

*Counsel for Plaintiff Fox Head, Inc.*